UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN
_____

In re:

WILLIAM SIM SPENCER,

        Debtor.

_____/

Case No. BT 22-01968
Chapter 7

**OPINION DENYING DEBTOR'S MOTION FOR CONTEMPT**

Appearances:

William Sim Spencer, Copemish, Michigan, Pro Se Debtor.

Ahmad M. Roby, Esq., Pontiac, Michigan, attorney for Oakland County Friend of the
      Court and Referee Rebecca Ellis.

I.       INTRODUCTION and ISSUES.

Pro se Debtor, William Sim Spencer, filed a chapter 7 case in September 2022. The only debt listed on the Debtor's schedules was a debt for over $73,000 in past-due child support owed to his ex-wife, Rene Sturdavent, under a judgment of divorce entered in 1994. Throughout the pendency of this bankruptcy case, the Debtor has filed numerous motions relating to this obligation, including the Motion for Order of Contempt that is currently before the court (the "Motion for Contempt," Dkt. No. 47.) The Motion for Contempt asserts that Sturdavent, the Oakland County Friend of Court (the "FOC"), and FOC Referee Rebecca Ellis[1] took various actions to collect the past-

---

[1]      The FOC and Referee Ellis are sometimes referred to collectively herein as the "Respondents."

due child support debt after the filing of the Debtor's bankruptcy case in violation of the automatic stay.

In February 2023, the Debtor also filed an adversary proceeding against Sturdavent to determine the dischargeability of the child support obligation.  (*See* AP 23-80013.)  The court determined to allow the adversary proceeding to conclude before addressing the Motion for Contempt and the other base case motions filed by the Debtor.  The Debtor and Sturdavent reached a settlement of the adversary proceeding in November 2023, under which they stipulated to discharge of the entire past-due support obligation.  Sturdavent also paid the Debtor $1,000 in settlement of his other claims against her, including the claims for violation of the automatic stay.  (*See* AP 23-80013, at Dkt. No. 89.)

After resolution of the adversary proceeding, the court conducted a final status conference on the remaining allegations against the FOC and Referee Ellis in the Motion for Contempt.  The court subsequently issued a scheduling order, setting an evidentiary hearing on the Motion for Contempt and identifying the following issues to be addressed at the hearing:

1. Did the Friend of Court and/or Referee Ellis willfully violate the automatic stay in the Debtor's bankruptcy case by:  (a) conducting a hearing regarding enforcement of the prepetition support order on October 3, 2022; and/or (b) sending the Debtor a billing coupon via email on November 7, 2022.

2.  Did the automatic stay apply to the collection actions allegedly taken by the FOC and/or Referee Ellis?   *See, e.g.*, 11 U.S.C. § 362(b)(2)(A), (B) & (C).

3.  Did the Friend of the Court generate the electronic billing coupons or cause the

    coupons to be sent via the MiChildSupport system?

(*See* Order Scheduling Evidentiary Hearing, Dkt. No. 102.)

The evidentiary hearing was held before this court on January 24, 2024.[2]  Two witnesses, the Debtor and Referee Ellis, testified at the hearing.  Because the Debtor appeared pro se, the court allowed him to provide direct testimony by narrative.  He was then cross-examined by counsel for the FOC and Referee Ellis.  The court found both the Debtor and Referee Ellis to be credible witnesses.  The court also admitted thirteen exhibits offered by the Debtor and seven exhibits offered by the Respondents into evidence.  At the conclusion of the hearing, the court took the matter under advisement.

## II.      JURISDICTION.

The court has jurisdiction over this bankruptcy case.  28 U.S.C. § 1334.  The bankruptcy case and all related proceedings have been referred to this court for decision.  28 U.S.C. § 157(a); LGenR 3.1(a) (W.D. Mich.).  The matter before the court is a core proceeding and this court has constitutional authority to enter a final order. 28 U.S.C. § 157(b)(2)(A), (G), and (O); *see In re Nat'l Century Fin. Enters., Inc.*, 423 F.3d 567, 573-74 (6th Cir. 2005) (motions to enforce the automatic stay constitute core proceedings).

---

2       The transcript of the evidentiary hearing is available at Dkt. No. 122 and is cited herein as "Tr. at ___."

III.   FINDINGS OF FACT.

A.   *The Child Support Obligation*.[3]

The Debtor and Sturdavent divorced in 1994, and the Debtor was ordered to pay child support for his two children.  The Debtor was subsequently incarcerated in 2001.  At that time, he owed approximately $29,455 in accrued child support.  By the time the Debtor was released from prison in August of 2016, his children were adults and no longer eligible for child support.  However, the arrearage owed to Sturdavent for past-due support had grown to nearly $90,000.  Not long thereafter, the Oakland County Friend of Court began collection efforts against the Debtor.  Among other things, those efforts resulted in the Oakland County Circuit Court entering an order abating the Debtor's support obligations for a portion of the time he was incarcerated. The Debtor was ultimately held in contempt for failing to pay his past due support, now in the reduced amount of approximately $76,000, presumably due to the abatement. The Debtor objected to the FOC's collection efforts on numerous bases and appealed both the contempt order and related litigation to the Michigan Court of Appeals.   The Court of Appeals affirmed the trial court's rulings.[4]

---

[3]   The information in this section is based on exhibits submitted by the Debtor in support of a prior Motion for Order of Contempt Against Rene Marie Sturdavent and Rebecca Ellis (Dkt. No. 16), which was denied without prejudice on November 8, 2022 (Dkt. No. 36). Although the court does not believe that the procedural history of the state court proceedings is disputed, these facts are not essential to the issues before the court.  Accordingly, the information in this section is provided for context only and does not constitute findings of fact for purposes of the current Motion for Contempt.

[4]   *See Sturdavent v. Spencer*, Nos. 351428 & 351745, 2020 WL 7310997, at *1 (Mich. Ct. App. Dec. 10, 2020), *leave to appeal denied*, 959 N.W.2d 500 (Mich. June 1, 2021).

On September 9, 2022, approximately twenty-one days before the filing of the Debtor's bankruptcy case, the Oakland County Circuit Court entered a Notice of Contempt Hearing for Failure to Pay Support.  (Dkt. No. 16, Exh. 1 at p. 13.)  The notice, which was mailed to the Debtor on September 12, 2022, stated that the Debtor's past-due support obligation was $73,355.10.  (*Id*. at p. 13-14.)  It instructed him to appear at a hearing October 3, 2022, at 9:30 a.m. to "explain why [he is] not in contempt" for failing to pay the past-due amount.  (*Id*. at p. 13.)  The notice provided that the show case hearing would be held by Zoom videoconferencing and that the hearing would be conducted by a referee.  (*Id*.)

B.   *The Bankruptcy Filing and Show Cause Hearing*.

The Debtor filed his chapter 7 case on September 28, 2022.  (Dkt. No. 1.)  The Schedules filed by the Debtor with his original petition indicated that he had no income and that his only assets were a cell phone and "[s]ome shirts, pants, socks and shoes that fit neatly in a duffle bag."[5]  (*Id.*)  The only liability listed is the child support debt to Sturdavent, which the Debtor scheduled at $73,455.10.  (*Id.*)  Rebecca Ellis, Referee for the Oakland County Friend of Court, was also scheduled as a creditor for this debt. (*Id.*)

The Bankruptcy Noticing Center served a Notice of Chapter 7 Bankruptcy Case on all creditors and parties in interest on September 30, 2022.  (Debtor's Exh. 1.)

---

[5]   The Debtor has amended his Schedules A/B several times during the pendency of this case to add assets including a disassembled 2001 Yamaha motorcycle valued at $500, unpaid prepetition unemployment benefits of $2,760, and an unpaid refund owed by the Oakland County FOC of $2,050.  The Debtor's amended schedules also disclose a pending lawsuit "Spencer v Pfizer" which was filed in the United States District Court for the Western District of Michigan and which the Debtor values at "+10M USD." (*See* Dkt. Nos. 30, 81, 95, 101.)  In any event, the Chapter 7 Trustee filed her Report of No Distribution on November 22, 2022, indicating that she determined no assets were available for distribution to creditors.

Oakland County Friend of Court Referee Rebecca Ellis was served with this notice via U.S. mail, and the notice was received by the Oakland County Clerk on October 3, 2022, at 8:20 a.m., just seventy minutes prior to the scheduled show cause hearing. (Respondents' Exh. B, at p. 3.)

On October 3, 2022, at approximately 9:30 a.m., Referee Ellis commenced the show cause hearing by asking for appearances.  (Debtor's Exh. 12, at p. 3.)  The Debtor did not appear.  Attorney Wade Jackman appeared on behalf of Sturdavent, and informed Referee Ellis that he had just received notice earlier that morning that the Debtor had filed a bankruptcy case.  (*Id*. at p. 3-4.)  Referee Ellis commented that the FOC was "supposed to get that notice too."  (*Id*. at p. 4.)  However, because the Debtor had not yet appeared, Referee Ellis recessed the hearing at 9:33 a.m.  (*Id*. at p. 5.)  At the evidentiary hearing held before this court, Referee Ellis testified that this was consistent with her typical procedure for show cause hearings, under which she would schedule five to eight matters for a particular time slot, take general appearances, and then re-call cases in the order in which participants had signed in. (Tr. at 56-57.)

The case was re-called at 9:54 a.m. when the Debtor appeared by telephone. (Debtor's Exh. 12, at p. 5.)  The Debtor indicated that he had problems with his phone connection to the Zoom platform and could not appear by video due to unreliable internet service.  (*Id*. at p. 5-6.)  Referee Ellis allowed the Debtor to participate by telephone, rather than by video, due to his connection issues.  (*Id*. at p. 6.)

Almost immediately after the hearing resumed, the Debtor informed Referee Ellis that he had filed for bankruptcy protection and that he objected to the hearing

going forward because of the automatic stay.  (Debtor's Exh. 12, at p. 6.)  Referee Ellis then confirmed the Debtor's current address and advised him to "check [his] mail" for notice of a subsequent show cause hearing that would be held in-person before Judge McDonald of the Oakland County Circuit Court.  (*Id*. at p. 7.)  Referee Ellis concluded the hearing at 9:57 a.m., just three minutes after it had resumed.  (*Id*. at p. 8.)  Before this court, Referee Ellis testified that she had not received the notice of the Debtor's bankruptcy filing from this court, either directly or from her support staff, as of the time the show cause hearing commenced or resumed.  (Tr. at 60.)

After conclusion of the October 3 show cause hearing, Referee Ellis verified that the Debtor had, in fact, filed a bankruptcy case.  As a result, Judge McDonald entered a Support Enforcement Order dated October 3, 2022.  (Debtor's Exh. 2; Respondents' Exh. C.)  The order, which was served on the Debtor on October 10, 2022, stated that the Debtor owed $73,355.10 in past due support as of that date.  (*Id*.)  However, instead of scheduling a further hearing, the order provided that the prior "order to show cause is set aside."  (*Id*.)  Referee Ellis testified that this was due to the bankruptcy filing.  (Tr. at 112.)

C.  *The Email Notification of Billing Coupon*.

In addition to the show case hearing, the Debtor received an email notification from MiChildSupport Services on November 7, 2022.  (Debtor's Exh. 3.)  The sender's email address was DoNotReply@michigan.gov and the text of the message indicates that it is an automated message notifying the Debtor that "a new Billing Coupon is available" to him.  (*Id*.)  The message did not show an amount due for past child support but includes hyperlinks on which the Debtor could click to view the full notification and

7

billing coupon.  (*Id.*)    The Debtor testified that he did not follow the hyperlinks to determine what amount was past due.  (Tr. at 41.)  The billing coupon itself was not offered as an exhibit at the evidentiary hearing.  The email notification also provided a link the recipient could use to "stop receiving notifications."  (Debtor's Exh. 3.)  At the hearing, the Debtor testified that he never attempted to follow that link to stop the email notifications, because he "didn't know [he] could."  (Tr. at 42.)

Referee Ellis's unrefuted testimony established that this email notification was generated by the State of Michigan, not the Oakland County FOC.  (Tr. at 64.)  She also testified that she was not aware this notification was sent to the Debtor and that she had no control over it or ability to stop it from being sent.[6]  (*Id.*)

D.  *Damages*.

During the evidentiary hearing, the Debtor offered little, if any, evidence of the damages he incurred as a result of the show cause hearing and email notification that

---

[6]    At the hearing, both the Respondents and the Debtor submitted excerpts from the "Michigan IV-D Child Support Manual," authored by Department of Health and Human Services. (*See* Respondents' Exh. G, dated September 1, 2023; Debtor's Exh. 13, dated September 4, 2019.)  The Respondents appeared to offer this exhibit in support of their assertion that they lacked control over the MiChildSupport system.  The Debtor argued, however, that the exhibit offered by the Respondents was not in effect as of the date of the alleged stay violations.  The Debtor's point is well-taken, and the court has given no weight to the Respondents' Exhibit G.

For his part, the Debtor pointed to a section of the manual entitled "Obligation Revision," which appears to set forth procedures through which FOC staff may make changes to the amount of support obligations. (Debtor's Exh. 13, at § 4.2.) Although the Debtor's exhibit was admitted into evidence, the relevance of the section he highlighted is unclear.  To the extent the Debtor was attempting to suggest that the FOC should have used the procedures set forth in the Manual to reduce the balance of his child support obligations to zero due to the filing of his bankruptcy case, and thereby to stop the billing notifications, the court finds no evidentiary or legal support for those assertions.  For that reason, the court also finds that Debtor's Exhibit 13 is entitled to very little weight.

he alleges violated the automatic stay.[7]  On cross-examination, he testified that the actual damages he incurred were in the form of "constitutional injuries."  The Debtor elaborated on this alleged "deprivation of his constitutional freedoms," explaining that it occurred:

> By being intimidated into paying money.  By being arrested if I didn't.  By being put in jail until somebody would be kind enough to show up with money.  Yeah.  I would say it all added up.  By being – no.  By having the knowledge that my actual freedom as an American citizen who has committed no crime was constantly in jeopardy, yeah.  That's a violation of your constitutional rights.  And I'm still one of them [sic] people that takes that stuff seriously.

(Tr. at 43.)  The Debtor offered no other evidence to substantiate these claims.

## IV.    DISCUSSION.

### A. *Did the Automatic Stay Apply to the Collection Actions Allegedly Taken by the Respondents?*

Although it is crystal clear that prepetition domestic support obligations, like the child support debt at issue in this case, are excepted from a debtor's discharge under § 523(a)(5),[8] the question of whether the automatic stay applies to collection of such

---

[7]    In his Motion for Contempt, and other pleadings filed with this court, the Debtor has raised varying and inconsistent arguments about the damages he suffered as a result of the alleged stay violations.  A pleading mistakenly filed in the related adversary proceeding argued that he should be awarded $20,000 in compensatory damages and $50,000 in punitive damages, mostly because his "on-going legal battles" with Sturdavent and the FOC caused "stress and emotional distress" that ultimately led to a "surprise diagnosis of severe coronary artery disease" which "nearly [took] his life" and required "emergency quadruple bypass surgery."  (*See, e.g.*, AP 23-80013, Dkt. No. 41.)  The legal memoranda he filed prior to the evidentiary hearing suggests that his damages stemmed from the arrests and imprisonment that resulted from the enforcement of the child support obligation, all of which occurred prepetition.  (*See* Dkt. No. 105.)  The Debtor offered no evidence or quantification of his alleged actual damages in support of either of these assertions.

[8]    This case presents a limited exception to this general rule because the Debtor's ex-spouse has stipulated to discharge of the child support arrearage as part of the settlement agreement in the adversary proceeding.

obligations is more nuanced.  Section 362(a) provides that the filing of a bankruptcy petition, "operates as a stay, applicable to all entities, of the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor" that was or could have been commenced prepetition "or to recover a claim against the debtor that arose before the commencement of the case . . . ."  11 U.S.C. § 362(a)(1); *Dominic's Rest. of Dayton, Inc. v. Mantia*, 683 F.3d 757, 760 (6th Cir. 2012) ("As a general rule, the filing of a bankruptcy petition operates to stay, among other things, the continuation of a judicial proceeding against the debtor that was commenced before the petition.").  Section 362(b) sets forth exceptions to the automatic stay, several of which apply to collection of domestic support obligations.  In this case, the exceptions that are most likely to be relevant appear in § 362(b)(2), which provides that the filing of the bankruptcy petition does not operate as a stay:

> (2)  under subsection (a) –
>
> > (B) of the collection of a domestic support obligation from property that is not property of the estate; [or]
> >
> > (C) with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute[.]

11 U.S.C. § 362(b)(2).  Accordingly, the interplay between the automatic stay and collection of domestic support obligations has been described as requiring two determinations:  (1) "is the matter something which would be stayed absent an exception to the stay;" and (2) if so, "does an exception under § 362(b) or other applicable law apply?"  *Wohleber v. Skurko (In re Wohleber)*, 596 B.R. 554, 567 (B.A.P. 6th Cir. 2019).  In the context of the Debtor's motion for contempt, which asserts that the FOC and Referee Ellis willfully violated the automatic stay under § 362(k), the

Debtor bears the overall burden of establishing the stay violation. *In re Dougherty-Kelsay*, 601 B.R. 426, 439 (Bankr. E.D. Ky. 2019), *aff'd,* 2022 WL 9730003 (6th Cir. Oct. 17, 2022). The Respondents, however, have the burden of proof on any defenses they raise, including showing that the automatic stay did not apply to their actions. *See, e.g., In re Flack*, 239 B.R. 155, 163 (Bankr. S.D. Ohio 1999).

In this case, the October 3, 2022, show cause hearing was clearly a judicial proceeding aimed at collection of the prepetition child support claim owed by the Debtor to Sturdavent. The notice of the hearing indicated that the amount of past due child support was $73,355.10 and directed the Debtor to appear on October 3 and explain why he was not in contempt for failing to pay this amount.[9] Further, none of the exceptions set forth in § 362(b)(2) apply to these collection efforts. The FOC and Referee Ellis did not offer any evidence that the show cause hearing was directed at collecting the past due child support from property that was not property of the estate, or that it was directed at the withholding of income. Given the Debtor's relative lack of assets and complete lack of income, such a showing was likely impossible. Regardless, the court concludes that the automatic stay applied to the October 3, 2022, show cause hearing.

The court reaches the opposite conclusion with regard to the November 7, 2022, email notification. The notice received by the Debtor by email was not itself an attempt to collect a prepetition debt, nor was the email sent by the FOC and/or Referee Ellis. On cross examination, the Debtor acknowledged that there was no dollar amount set

---

[9] The notice itself was entered prior to the filing of the bankruptcy petition and could not have violated the automatic stay, which did not arise until the petition date.

forth on the notice itself. Instead, it provided a link to a billing coupon which the Debtor testified he chose not to view and which was not offered by the Debtor as evidence. The notice also provided a link through which the Debtor could have stopped receiving notifications or managed his notification settings. The Debtor testified that he was not aware that he could have opted out of the notifications by clicking on the link provided. In short, the evidence presented to the court established that receipt of the email notices by a child support debtor was voluntary and could have been stopped by a request from the Debtor at any time. The email notification was not an attempt to collect a prepetition debt and was not covered by the automatic stay.[10]

### B. Did the Respondents Willfully Violate the Automatic Stay?

Having found that the automatic stay applied to the show cause hearing, the court must next consider whether Referee Ellis and/or the FOC willfully violated the stay in connection with that hearing. Section 362(k) provides a remedy to individual debtors who are injured by a "willful violation" of the automatic stay by providing that such debtors "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). To prevail on a § 362(k) claim, a debtor must prove, by a preponderance of evidence, "that the stay imposed under § 362 was violated, that the violation was committed willfully and that [he] was injured by the violation." *In re Grine*, 439 B.R. 461 (Bankr.

---

[10]    Even if the email notification was an attempt to collect a debt in violation of the automatic stay, the Debtor has not met his burden of establishing that the email notification was sent by Referee Ellis or the FOC. The evidence submitted at the hearing established that this notification was generated by the State of Michigan, not the Oakland County FOC or Referee Ellis. Referee Ellis's unrefuted testimony was that she was not aware of this email notification and did not have any control over it. Accordingly, even if the email notification violated the stay, the Debtor has not tied this violation to any action taken by Referee Ellis or the FOC.

N.D. Ohio 2010). A willful violation of the stay occurs "when the creditor knew of the stay and violated the stay by an intentional act." *TranSouth Financial Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 687 (B.A.P. 6th Cir. 1999). "A specific intent to violate the stay is not required, or even an awareness by the creditor that [its] conduct violates the stay. It is sufficient that the creditor knows of the bankruptcy and engages in deliberate conduct that, it so happens, is a violation of the stay." *In re Daniels*, 206 B.R. 444, 445 (Bankr. E.D. Mich. 1997).

The Respondents have argued that Referee Ellis could not have willfully violated the stay because she did not have actual notice of the filing of the Debtor's bankruptcy case when she conducted the October 3, 2022, show cause hearing. The court finds this argument unavailing. The court credits Referee Ellis's testimony that she did not have actual notice of the bankruptcy petition when she began the show cause hearing at 9:30 a.m. on October 3, notwithstanding the Oakland County Clerk's receipt of the Notice of Chapter 7 Bankruptcy Case seventy minutes before the hearing. However, it is undisputed that counsel for Sturdavent, Attorney Jackman, informed Referee Ellis of the Debtor's bankruptcy filing at the outset of the show cause hearing. Referee Ellis acknowledged this information by responding that the FOC was also supposed to receive formal notice of the bankruptcy filing. Referee Ellis and Attorney Jackman briefly discussed the effect of the bankruptcy filing on the past due support obligation, and Referee Ellis commented that she did not believe that obligation would be dischargeable. When the case was re-called at 9:54 a.m. and the Debtor appeared, he again informed Referee Ellis that he had filed for bankruptcy protection. This was sufficient to place Referee Ellis on notice of the bankruptcy and

13

the existence of the automatic stay.  *See In re Daniels*, 206 B.R. at 445 (knowledge of the bankruptcy case itself equates to knowledge of the automatic stay).

Given Referee Ellis's knowledge of the bankruptcy case, the question becomes whether she willfully violated the stay by failing to immediately stop the show cause hearing and ultimately adjourning it.  The court concludes that she did not.  To the contrary, this court finds that Referee Ellis's conduct during the show cause hearing was entirely appropriate.  First, the Debtor did not appear at 9:30 a.m. because he could not connect via Zoom.  Referee Ellis paused the hearing until 9:54 a.m., when the Debtor finally appeared by telephone.  After the Debtor reiterated the information Attorney Jackman had provided about his recent bankruptcy filing, Referee Ellis took no further action to continue the proceeding against the Debtor or to collect the prepetition support obligation.  Although Referee Ellis did not use the word "adjourn," that is what she effectively did at the conclusion of the hearing when she encouraged the Debtor to check his mail for a notice of a subsequent in-person show cause hearing before Judge McDonald.  She then concluded the hearing without noting any particular disposition.

Referee Ellis did not violate the automatic stay by adjourning the show cause hearing.  The Bankruptcy Court for the Eastern District of Michigan recently confronted this same issue and concluded that failing to immediately stop a state court proceeding – without more – does not violate the stay.  *See In re Jackson*, 637 B.R. 487, 488-89 (Bankr. E.D. Mich. 2022) ("merely adjourning a state court matter, or failing or refusing to cause a pending state court lawsuit to be closed or dismissed, without more, is not a violation of the automatic stay") (citing *Worthy v. World Wide Fin. Servs., Inc.*, 347 F.

14

Supp.2d 502, 508-09 (E.D. Mich. 2004), *aff'd*, 192 F. App'x 369 (6th Cir. 2006) (postponement of a sheriff's sale under state law does not violate the automatic stay)) (additional citations omitted).   This result is traceable to the general purpose of the automatic stay, which is to "give the debtor a breathing spell from his creditors, to stop all collection efforts, stop all harassment of a debtor seeking relief, and *to maintain the status quo between the debtor and his creditors*, thereby affording the parties and the court an opportunity to appropriately resolve competing economic interests in an orderly and effective way." *Worthy*, 347 F. Supp.2d at 508 (quoting *In re Fine*, 285 B.R. 700, 702 (Bankr. D. Minn. 2002)).   Adjournment of a state court proceeding "connotes the postponement" of that proceeding and "effectuates the purposes of § 362(a)(1) by preserving the status quo until the bankruptcy process is completed or until the creditor obtains relief from the automatic stay."   *Taylor v. Slick*, 178 F.3d 698, 702 (3d. Cir. 1999).

Here, Referee Ellis acted appropriately and consistently with the automatic stay when she adjourned the show cause hearing after learning of the Debtor's bankruptcy filing. Importantly, no further collection proceedings occurred after the hearing was adjourned.   Instead, after the conclusion of the hearing, Referee Ellis followed-up and confirmed the Debtor's bankruptcy filing.   An order setting aside the prior order to show cause was subsequently entered by Judge McDonald and no additional hearings were held.   In conclusion, although the automatic stay applied to the October 3, 2022, show cause hearing, Referee Ellis did not violate the stay by adjourning the hearing.   Her actions merely maintained the status quo with respect to the past-due child support obligation and the attempts by the FOC to collect it.

C. *Did the Debtor Incur Damages from the Alleged Stay Violations?*

The evidence before this court does not support the Debtor's assertions that Referee Ellis or the FOC violated the automatic stay with respect to the show cause hearing or the email notification.  However, even if the court had reached the opposite conclusion, the Debtor has offered no evidence that he suffered actual damages as a result of these actions.  As previously noted, damages are an essential element of a cause of action under § 362(k).  Although § 362(k) mandates an award of actual damages when a willful stay violation has occurred, a party is only entitled "to damages reasonably incurred as a proximate result of the violation of the stay."  *In re Grine*, 439 B.R. 461, 468-69 (Bankr. N.D. Ohio 2010) (citations omitted).  Any such damages must be "proven with reasonable certainty and must not be speculative or based on conjecture."  *Id*. at 469 (citing *Archer v. Macomb County Bank*, 853 F.2d 497, 499-500 (6th Cir. 1988)).  The Debtor has the burden of proving his entitlement to damages.  *Id*. (citing *TranSouth v. Sharon (In re Sharon)*, 234 B.R. 676, 687 (B.A.P. 6th Cir. 1999)).

Here, the Debtor offered no evidence of actual damages, let alone damages incurred as a result of the actions of the FOC or Referee Ellis which he alleges violated the automatic stay.  At the evidentiary hearing, the Debtor's only attempt to establish actual damages was through his testimony that the damages he incurred were "constitutional injuries."  He made no attempt to quantify these alleged injuries.

The theories regarding damages alleged by the Debtor in his paperwork are no more illuminating.  The Debtor's Memorandum of Legal Authorities and Argument in this matter includes a lengthy list of alleged damages, most of which go far beyond the

16

alleged stay violations that are currently before the court.[11]   The only damages that could reasonably pertain to the alleged stay violations are the Debtor's claims that he is entitled to between $25,000 and $50,000 in compensatory damages for violations of the Due Process Clause of the Fourteenth Amendment, loss of liberty, humiliation, emotional distress and mental suffering, and punitive damages of $75,695.10, which is the amount of the accrued child support the Debtor believes the FOC was trying to recover from him.   These arguments, which the Debtor did not support with evidence at the hearing, are much too speculative to form the basis for an award of actual damages under § 362(k).

## V.   CONCLUSION.

The Debtor's Motion for Contempt against Referee Ellis and the FOC is the latest volley in a years' long battle to show that his past-due child support obligations were assessed illegally, that the FOC's collection efforts were improper, and that the FOC committed a fraud on the state court.   These issues were litigated extensively in both the Oakland County Circuit Court and the Michigan Court of Appeals.   The Debtor's attempts to avoid paying the past due support obligation have also been directed at his ex-spouse, Sturdavent, from whom he was divorced 30 years ago and

---

[11]      For instance, the Debtor's Memorandum cites to his arrests in 2018 and 2020 for failure to pay support and asserts theories of malicious prosecution, false imprisonment, false arrest, and other wrongful conduct by the FOC which dates back to at least 2016.  These issues are likely outside this court's jurisdiction, and certainly outside the scope of the scheduling order in this contested matter.  These prepetition actions also cannot possibly be the proximate result of the stay violations alleged here, which occurred after the filing of the Debtor's bankruptcy case in 2022.

The health-related damages identified in previous pleadings filed by the Debtor suffer from a similar casual flaw.  Although the Debtor's health issues occurred postpetition, he has offered no proof that they were the result of any actions taken by the FOC or Referee Ellis.

who has stipulated to the dischargeability of the child support obligation in this bankruptcy case. Notwithstanding this settlement, which the court views as extremely favorable to the Debtor, he still seeks his pound of flesh from Referee Ellis and the FOC. But there is no pound of flesh to be had here because Referee Ellis did not violate the stay, the FOC did not violate the stay, and the Debtor did not prove that he suffered any damages even if the stay had been violated. For these reasons, the Debtor's Motion for Contempt shall be denied. A separate order shall be entered accordingly.

**IT IS SO ORDERED.**

**Dated May 6, 2024**





James W. Boyd
United States Bankruptcy Judge